José Salas Noa, Plaintiff and Appellee, *v.* Germánico S. Belaval, Defendant and Appellant.

No. 6564. Argued April 23, 1937.—Decided July 19, 1937.

*Emilio S. Belaval* for appellant.  *E. H. F. Dottin* for appellee.

M<small>R</small>. C<small>HIEF</small> J<small>USTICE</small> D<small>EL</small> T<small>ORO</small> delivered the opinion of the Court.

On October 17, 1931 José Salas Noa, by his attorney Enrique Campillo, brought an action of debt and for damages in the District Court of San Juan against Germánico S. Belaval to recover $314 owed and $1,275 damages.

In his complaint he alleged in substance that in the action brought by the defendant Belaval against Isabel Agostini he had been appointed by the court, upon the request of and on the responsibility of Belaval, custodian of the property attached for the purpose of securing the effectiveness of the judgment which might be rendered, which property consisted of nineteen heads of cattle, one horse and one donkey; that he accepted and was in possession of and kept the property from January 30, 1930 to June 30, 1931, when Belaval seized them alleging that they had been adjudicated to him at public sale; that as a result he incurred the expenses which he specifies, amounting to $601; that the cattle produced $287 in milk which he applied to the partial payment of the expenses alleged, and that the necessity of attending to the cattle caused him damages which he reasonably fixes at $75 per month, or a total of $1,275.

.: On October 30, 1931, the defendant appeared by his. attorney José Martínez Dávila and requested that the plaintiff be ordered to state separately the two causes of action which he alleges in the complaint. The court so ordered it on the following November 25, and the amended complaint was filed on December 5, 1931.

On December 15, 1931, the defendant demurred. to the complaint for lack of facts. The demurrer was decided sixteen days later by Judge de Jesús as follows:

"Upon the hearing on the demurrer for lack of sufficient facts to constitute a cause of action, the court sustains the same insofar as it refers to the second cause of action, since it does not show an obligation on the part of the defendant in favor of the plaintiff and failure to fulfill the said obligation to the prejudice of the plaintiff. It is alleged in the second cause of action that the plaintiff attended to the fostering and care of the property left in his custody, with the zeal and diligence of a good father of a family and that he suffered damages which he reasonably estimates at $75 a month, of a total of $1,275; but this allegation does not imply that the defendant failed to fulfill an obligation to the plaintiff inasmuch as the fact of being a custodian does not necessarily imply damage to the custodian, specially when he collects a reasonable amount for the maintenance of the cattle left in his custody. The custodian might be damaged as a result of the deposit and yet the defendant might not be the cause of the said damage.

The plaintiff is granted ten days to amend his complaint insofar as it refers to the second cause of action."

On March 30, 1932, the second amended complaint was filed. On April 8, 1932, the defendant moved to substitute Attorney Emilio S. Belaval for his attorney José Martínez Dávila, who had died, and the court so ordered.

The defendant, through his attorney, filed a lengthy demurrer on April 8, 1932. The demurrer was for misjoinder of actions, ambiguity, want of jurisdictional amount, and of jurisdiction over the person of the defendant, and lack of facts to constitute a cause of action.

On June 4, 1932, the court, through Judge Llauger, decided the demurrer as follows:

"We are dealing in this case with a demurrer filed by the defendant and which because of its length constitutes a record in this kind of pleadings. The complaint alleges two causes of action. The first is for the recovery of certain expenses which the plaintiff incurred as the custodian of cattle which was attached on motion of Germánico S. Belaval in the action which he brought against Isabel Agostini. The second cause of action is for the recovery of the amount of $1,275, as income which the plaintiff failed to receive, at the rate of $75 a month, because he devoted his attention and efforts to the care and custody of the attached property.

"The parties argued the question at length and submitted the case to the consideration of the court. The first ground of demurrer is for misjoinder of actions. As we have already seen from the brief summary of the causes of action brought, while the plaintiff is entitled to the reimbursement of the amounts actually spent in the care of the attached property put in his charge, we do not see how the defendant in this case (plaintiff in the attachment suit), can be made liable for the income which the plaintiff failed to receive. It is clear that the actions may not be joined and the demurrer must be sustained on the ground of misjoinder of actions.

"Since the decision on this ground renders a consideration of the others unnecessary, for so long as the actions may not be joined the plaintiff in this case could continue in this case either of the two actions brought in this suit, we must grant the plaintiff a prudential term to amend his complaint and choose the cause of action which he considers advisable, and we accordingly grant him a term of ten days to file an amended complaint."

The plaintiff, through his attorney, made four motions for extensions of time to amend his complaint. The court granted them, and on August 16, 1932 he filed his third amended complaint which does not comply with the order of June 4, 1932, and again alleges the two causes of action alleged in the beginning. From the first cause of action he eliminates the statement that the cows in his custody had produced $287 worth of milk which the plaintiff had applied to the partial payment of the expenses claimed, and thus instead of limiting himself to claiming the balance of $314

as before, he requests judgment for the total amount of the expenses, that is for $601. As to the second cause of action which was based on the $75 per month which the plaintiff earned in his habitual occupations and which he failed to receive because he was engaged in fulfilling his obligations as custodian, it is alleged that the plaintiff accepted the position of custodian at the instance of the defendant and on his promise of remunerating him, $75 per month being the reasonable amount of the said remuneration, which was not specifically stipulated. The complaint is signed by attorney Enrique Campillo.

The months of September and October passed and nothing appears to have been done in the case. On November 12, 1932, the plaintiff, through another attorney, Mr. Quirós Méndez, moved that the default of the defendant be noted for not having answered the third amended complaint. Three days later the clerk of the court entered the default.

The action remained in this stage for more than seven months and on June 28, 1933, the plaintiff, through attorney E. H. F. Dottin requested that it be included in the calendar for trial. The next entry in the record is the judgment of the court delivered two days later as follows:

"José Salas Noa brought an action against Germánico S. Belaval to collect $601 which the former used in the care, transportation and feeding of cattle which Belaval attached and caused to be delivered to him as custodian in civil action no. 11,456 brought by Germánico S. Belaval against Isabel Agostini before this same court; and also to collect $1,217.50 as salary from February 23, 1930 to June 30, 1931 as manager of a farm of the said Belaval at the rate of $75 per month.

"In this case we are dealing with the third amended complaint; it is verified and contains two causes of action, it was served on counsel for the defendant and filed with the Clerk on August 16, 1932.

"The defendant failed to plead to the third amended complaint and on November 15, 1932 the default of the said defendant was entered on motion of the plaintiff.

"This case came on for trial today, in the order fixed in the calendar, there appearing only the plaintiff with his counsel who

pronounced himself ready for trial. The default of the defendant having been duly entered, the trial was held.

"The plaintiff read his pleadings, introduced his documentary and oral evidence and submitted the case without argument.

"And the court, as a result of the said evidence, renders judgment for the plaintiff and in consequence thereof orders defendant Germánico S. Belaval to pay the plaintiff José Noa the sum of $601 for expenses claimed in the first cause of action, plus $1,217.50 for salary earned by the plaintiff as manager of a farm of the defendant, claimed in the second cause of action, plus costs but without including attorney's fees."

The defendant was notified on July 17 and on August 4 following he filed a verified motion, accompained by an affidavit of merits and an answer, asking the court to vacate its judgment and order the opening of the default with leave to answer. On November 6, 1933, the plaintiff filed a motion in opposition to that of the defendant. Evidence was heard on the matter and on February 19, 1934, the court, through Judge Llauger, denied the motion of the defendant. The latter, on August 10, 1933 and on March 2, 1934, appealed respectively from the judgment and from the order refusing to vacate the judgment and to open the default with leave to answer. The appeals were handled jointly. The record contains a transcript of the evidence presented at the trial at which the plaintiff appeared and at the hearing of the motion of the defendant to vacate the judgment.

We have referred to the action from the time it was brought in order that the facts might speak for themselves. Having set out the facts, let us examine the explanation which the defendant offers to justify his conduct in failing to file the proper plea when he was notified of the third amended complaint. It appears in his motion and in the affidavit of merits which accompanies it and which complies with the requirements of the law and decisions on the point. In addition his attorney testified at the hearing, with the objection of the attorney for the plaintiff Mr. Dottin, to everything referring to the statements or promises of the former

attorney for the plaintiff, Mr. Campillo, who had died, as follows:

"My name is Emilio S. Belaval. I am an attorney. I swear that on March 31, 1932, I was served with notice of an amended complaint by the plaintiff in this case, Mr. José Salas Noa. . . . That upon being served with notice of this complaint I went to the Court to examine the record and I found that previous to that notice a demurrer to the said complaint had been filed and had been sustained . . . and ten days were granted to the plaintiff to file an amended complaint. That since that date on which I was notified of the said complaint was March 31, 1932 . . . . ·, I went to the former attorney for the plaintiff, Enrique Campillo, for an explanation of the causes of the said irregularity, . . . Attorney Campillo explained to me that he had been ill and that he had not been able to do it before."

He refers to the demurrer to the second complaint and then to the third and continues:

"We talked in front of the docket book of the court, where I had gone to examine the record. Mr. Campillo told me that he had been and was still ill and had been unable for some time to go to his office that week, and begged me to be patient, I told him that I had no objection whatever, and told him of my difficulties in remaking the record of the case, because the documentary evidence on the point had been lost due to the death of colleague Martínez Dávila; I explained to him the steps that had been taken with Mr. La Torre and Martínez Dávila's stenographer to obtain the said evidence, and we agreed that, instead of filing any other pleading, I would file an answer when I could gather the evidence, and we would try the case on its merits. Later, about six or seven days later, we met in front of this court building, downstairs, buying Internal Revenue stamps.

" . . . we spoke . . . of the possibility of making a stipulation whereby the plaintiff would obtain the amount of the first cause of action less four hundred odd dollars which as custodian he had kept as the proceeds of the milk sold. As the court will see the plaintiff accepted in the first two complaints that the total proceeds of the milk of the attached cows was kept by him and he was willing to make a liquidation whenever he should be asked to do so: We agreed to consider that. Two or three months later Mr. Campillo and I talked in front of the Bouret building in San Juan, on a Saturday

afternoon. I asked him 'what about the stipulation in the suit, of the first cause of action minus the milk', and then he said to me 'I have not been able to speak to the plaintiff, but I expect to do so at any moment now, and I'll let you know.' The case was heard in July, or on June 30 and on July 12 the plaintiff, not the attorney of record, was notified of the judgment. . . I immediately went to Mr. Campillo and I must state to this court that it was absolutely difficult for me to talk to him. Finally about the 20th or 25th of July of that year, about the 24th or 25th, I don't remember exactly, of that year, I was able to speak to Mr. Campillo one morning in his office, and he told me that he was very sorry about what had happened, that what had happened was that a man named Tomás Rovira, in charge of this suit, had taken it to another attorney; that, naturally, he was at my service to testify on these points before this court. Later, after filing the motion to vacate the judgment, I went to Mr. Campillo and he said to me 'if you need my testimony as to the agreement that you would answer on the merits and that we could settle the suit on that basis and the defendant was agreed, I have no objection to giving it.' "

The reasons which the trial court gave for deciding that the explanation was not acceptable, are shown in its decision as follows:

"The court has thoroughly studied the question raised. It is reduced to determining whether, under the circumstances appearing in the present case, a certain oral agreement between the former attorney for the plaintiff (who has died), and the present attorney for the defendant, by which the latter understood that the plaintiff would wait until the defendant could reconstruct the evidence of his case in exchange for which the latter would abstain from filing any pleading other than an answer to the complaint on its merits, is a sufficient reason for vacating the judgment and opening the default. This point, with which the testimony presented by the defendant dealt, is denied by the plaintiff, who states that according to his information and belief neither of his attorneys at any time made any agreement with the defendant or the latter's attorneys.

.   .   .   .   .   .   .   .   .

" . . . . we believe that if we take into consideration the time elapsed between the filing of the third complaint and the entry of default and then from the date of the said entry to that of the judgment, the reason given by the defendant supposes inexcusable neglect

on his part in handling the instant case. This court well understands that it is a better practice to allow the parties to defend themselves and to decide the questions after hearing them, than to sustain judgments by default when it is shown that the negligence in complying with procedural requisites was excusable and not due to the desire of hindering and delaying the cause, and it also believes that it should relieve a party of the effects of a judgment rendered against him through mistake, inadvertence, surprise or excusable neglect, as provided in Section 140 of the Code of Civil Procedure; but it is the opinion of this court that the neglect in complying with the procedural law in this case is inexcusable, and in its judgment there has been no mistake, inadvertence, surprise or excusable neglect such as to relieve the defendant from the effects of the judgment rendered.

"Moreover, according to the rules for the district courts in civil cases (Rule 27) no agreement between counsel or the parties relative to a pending action shall be effective unless it be in writing, signed and filed with the other documents as part of the record, or unless it be made in open court for the same purpose. Since reference has been made only to a certain oral agreement between the attorneys for the parties and taking into account the indefinite and uncertain form in which the terms of the same have been stated as to the time granted to the defendant for filing his answer, as well as the other circumstances which are shown in the record, we are convinced that this is not a case which merits decision in favor of the defendant. Otherwise we would be making ill use of our discretion."

We have hesitated a great deal in respect to the attitude which we should adopt in the instant case, since the trial judge exercised his discretion against the defendant whose negligence or lack of vision in failing to put the agreement with the attorney for the plaintiff into writing, is evident.

But after a careful consideration of the matter we find, in the very extension of the neglect of the attorney for the defendant, which was extraordinary, a confirmation of the truth of what he says in regard to the conversations and agreements with Mr. Campillo, the attorney for the plaintiff, because it is otherwise inexplicable that a litigant who acts as the defendant did in this case and who obtains the favorable decisions he obtained should abandon his position and

permit judgment to be rendered against him on the basis of an amended complaint which claimed more from him than the previous one in its first cause of action and which substantially changed the second.

It is indeed on the last amended complaint that the case rests, but in a case where the question before the judicial conscience is whether or not a judgment obtained on the pleadings and the evidence of only one of the parties should be vacated in order to give the other party another opportunity to intervene in the case, so that the decision may be rendered with greater guarantees of soundess, then the record may be examined closely in order to grasp thorougly the truth of the matter and the probable justice of the claim in whole or in part.

We believe that we should say no more, for fear that our reasoning might be invoked later as having prejudged the merits of the litigation. We have examined the defenses alleged by the defendant and we are not convinced that all of them lie, but we do believe that if some of them are proved, a judgment substantially different from the one rendered would have to be pronounced.

Having finally reached the conclusion that the error of the court in denying the motion of the defendant of August 4, 1933, requesting that the judgment by default against him be vacated, the default opened and leave granted to answer is manifest, inasmuch as the surrounding circumstances demanded the exercise of its discretion in favor of a decision of the case on its merits, its order must be reversed and another entered instead vacating the judgment by default rendered on June 30, 1933, opening the default and permitting the defendant to file his answer.

Naturally, once the judgment is vacated, the appeal taken directly from it becomes academic and must therefore be dismissed.

Mr. Justice Córdova Dávila took no part in the decision of this case.